■ In the Matter of CONNELLY A. SCHNEIDER, Appellant, v RENEE LASCHER, Respondent. (And Another Related Proceeding.) [899 NYS2d 479]—

Garry, J. Appeal from an order of the Family Court of Chenango County (Sullivan, J.), entered February 25, 2009, which, among other things, dismissed petitioner's application, in two proceedings pursuant to Family Ct Act article 6, for custody of the parties' child.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of one child (born in 2004). The parties resided in New Jersey until approximately six months after the child's birth, when they relocated to the Town of Otselic, Chenango County. In 2008, the parties' relationship dissolved and the mother returned to New Jersey with the child. The father commenced this proceeding seeking custody of the child and, pending a hearing, Family Court entered a temporary custody order under which the parties alternated physical custody of the child every two weeks. The mother petitioned for modification of the temporary order. Following the hearing, the court awarded custody to the mother, with liberal visitation for the father, and retained jurisdiction for 18 months. The father appeals.

As both parties acknowledge, Family Court was not required to engage in a strict application of the relocation factors established in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]) in this initial custody determination, although the mother's relocation is "a very important factor among the constellation of factors to be considered in arriving at a best interests determination" (*Ostrander v McCain*, 68 AD3d 1480, 1481 [2009] [internal quotation marks and brackets omitted]; *see Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255 [2009]). We disagree with the father's contention that Family Court failed to give this factor adequate consideration. The court found that despite spending the majority of her life at the father's residence, the child's most meaningful family contacts were in New Jersey, where most of both parents' extended families reside, and where the mother now resides with her family—in the same home the

family had shared prior to moving to New York. To the extent possible, the court attempted to minimize the detrimental effect of distance on the father's relationship with the child and his opportunities for regular and meaningful contact by awarding him liberal visitation, including extended visits during summer and school vacations as well as time with the child in New Jersey when he visits relatives and friends in the area (*see Malcolm v Jurow-Malcolm*, 63 AD3d at 1257-1258; *Matter of Hills v Madrid*, 57 AD3d 1175, 1177 [2008]). We further note that the court specifically retained jurisdiction for a period encompassing two summers so as to be available if necessary to monitor the success of this schedule.

The custody award was sufficiently supported by analysis of the child's best interests. "[T]he overriding consideration in determining custody is always the best interests of the child" (*Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]; *see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]). This assessment must be based on a careful analysis of all the circumstances, including " 'maintaining stability for the child[ ], the child[ ]'s wishes, the home environment with each parent, each parent's past performance and relative fitness, each parent's ability to guide and provide for the child[ ]'s overall well-being and the willingness of each to foster a positive relationship between the child[ ] and the other parent' " (*Matter of Grant v Grant*, 47 AD3d 1027, 1028-1029 [2008], quoting *Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1102 [2007]). A court is not required to state explicitly that it is engaging in a best interest analysis when the determination is properly based on consideration of these factors and on the needs and best interests of the child.

Here, Family Court initially acknowledged the difficulty of choosing between the parents, as in the court's view, both were loving parents with strong relationships with their child, who shared parenting responsibilities before their relationship dissolved and were each capable of raising her successfully. In addition to noting the strengths of each parent, the court expressly found certain "gaps" or weaknesses in the testimony each presented. For example, the father had planned more effectively for the child's speech therapy needs than had the mother; however, based upon all the testimony, the court expressed confidence that the mother would address this need responsibly when the child was in her care. The record indicates that either parent can provide the child with stable, suitable housing and can spend significant time with her. The court noted that the mother's full-time employment in the same day care/pre-kindergarten facility where she intends to enroll the child will

permit her to spend time with the child during working hours.[1] The mother was found to use her time with the child to engage in more interactive social and educational activities, such as reading aloud, than did the father, and she made greater efforts than the father to communicate with the child by telephone when she was not in her care.[2] According the appropriate " 'great deference' " to the court's opportunity to hear the testimony and assess the credibility of witnesses, we find a sound and substantial basis for its conclusions in this record (*Matter of Marchand v Nazzaro*, 68 AD3d 1216, 1217 [2009], quoting *Matter of Barndollar v Barndollar*, 234 AD2d 858, 859 [1996]) and conclude that the custody award in this difficult case was based upon careful consideration of the appropriate factors and the child's best interests (*see Matter of Bjork v Bjork*, 58 AD3d 951, 954 [2009], *lv denied* 12 NY3d 708 [2009]; *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1102).

Finally, Family Court acknowledged that requiring the father to do the majority of the driving to the exchange location in New Jersey was difficult for him, particularly in light of his knee injury. However, this was expressly based upon the parties' successful past practice, the demands imposed on the mother's time by her full-time employment schedule, and the father's unemployment. Again noting that the court retained jurisdiction for the express purpose of monitoring the success of visitation arrangements, we find no reason to disturb this determination.

Peters, J.P., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, without costs.

---

1. The father is unemployed due to an injury sustained during military service that does not prevent him from caring for the child.

2. Although not dispositive (*see e.g. Matter of Kowatch v Johnson*, 68 AD3d 1493, 1496 n 2 [2009], *lv denied* 14 NY3d 704 [2010]), we note that the child's separate Law Guardians at trial and on appeal support the custody determination. While acknowledging the difficulty of choosing between two competent, loving parents, the Law Guardian in Family Court opined that the mother's circumstances presented a "slight" advantage to the child.