■ In the Matter of Stephanie R. Ames, Appellant, v Dane G. Ames, Respondent. (And Another Related Proceeding.) [947 NYS2d 836]—

Stein, J.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 2004).* When the mother filed the instant custody petition in April 2010, the parties were married, but separated, and shared physical custody of the child. Both parties were then residing in the Town of Canton, St. Lawrence County. In July 2010, Family Court issued a temporary order granting primary physical custody to the mother and visitation to the father. In August 2010, the father counter-petitioned for joint legal custody and shared or primary physical custody of the child. Thereafter, in November 2010, the mother sought an order permitting her to relocate from Canton to the City of Watertown, Jefferson County. Following a hearing, which took place over the course of six days in December 2010 and January 2011, Family Court denied the mother's motion, dismissed her petition and awarded the parties joint legal custody, with primary physical custody to the father and visitation to the mother. The mother now appeals and we affirm.

Of paramount concern in any child custody dispute is the best interests of the child (see Matter of Lynch v Gillogly, 82 AD3d 1529, 1530 [2011]; Moor v Moor, 75 AD3d 675, 676 [2010]; Matter of Bush v Stout, 59 AD3d 871, 872 [2009]; Matter of Robinson v Cleveland, 42 AD3d 708, 709 [2007]). Factors to be considered in making a custody determination include, among others, "maintaining stability for the child, the child's wishes, the home environment with each parent, each parent's past performance,

---

* The father also has two sons from a prior marriage.

relative fitness, ability to guide and provide for the child's over-all well-being, and the willingness of each parent to foster a re-lationship with the other parent" (*Moor v Moor*, 75 AD3d at 676 [internal quotation marks and citations omitted]). In an initial custody proceeding, a parent's decision to relocate is also a pertinent consideration in determining the child's best interests, although strict application of the factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727, 740-741 [1996]) is not required (*see Matter of Lynch v Gillogly*, 82 AD3d at 1530; *Matter of Schneider v Lascher*, 72 AD3d 1417, 1417 [2010], *lv denied* 15 NY3d 708 [2010]; *Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255-1256 [2009]).

In this case, Family Court heard extensive testimony from each of the parties and several other witnesses, including the child's teacher, her baby-sitter, the father's girlfriend and the mother's boyfriend. The mother testified that she and the father resided together off and on from 2003 until October 2009. At the time of the parties' final separation and until the July 2010 temporary custody order, they shared parenting duties with re-spect to their daughter, as well as the father's two sons. For the most part, it appears that they maintained a flexible visitation arrangement and were generally cooperative with one another. While there was some conflicting testimony concerning, among other things, prior arguments between the parties, the father's method of disciplining the child and the child's relationship with her half brothers, Family Court clearly resolved such conflicts in favor of the father. Indeed, in its decision, Family Court found that both parents were capable of providing for the child's physical, emotional and financial needs.

With respect to relocation, the mother claimed that the rea-son for her move to Watertown was that the lease on her apart-ment in Canton had expired, she had found better employment in the Watertown area and was in a stable relationship with her boyfriend, with whom she was residing in an apartment leased in his name only. However, the record reflects that the mother did not have secure employment in Watertown and the stability of her relationship with her boyfriend was questionable. Nor does the mother have any extended family in the Watertown area. The father, on the other hand, has steady employment in Canton and plans to remain in the family home, in the same school district that the child has attended since she started school. Also in Canton are the child's two half brothers, with whom Family Court found she has a "loving and close relation-ship," as well as the father's large extended family, including the child's cousins of similar age. In addition, the evidence

indicates that the father is willing and able to foster the child's relationship with the mother (*see Matter of Zwack v Kosier*, 61 AD3d 1020, 1022 [2009], *lv denied* 13 NY3d 702 [2009]).

Based on all of the evidence, Family Court concluded that the mother's only reason for relocating "was so that she could live with her boyfriend with whom she has no set plan for a long-term future together" and that the move would not enhance the child's economic, emotional or educational well-being. According appropriate deference to Family Court's credibility assessments, based on its direct observation of the witnesses and evidence presented at the fact-finding hearing, we find ample support in the record for the court's determination that an award of primary physical custody to the father was in the best interests of the child (*see Matter of Lynch v Gillogly*, 82 AD3d at 1530-1531; *Matter of Schneider v Lascher*, 72 AD3d at 1418-1419; *Matter of Zwack v Kosier*, 61 AD3d at 1021-1022; *Matter of Robinson v Cleveland*, 42 AD3d at 709).

We also reject the mother's contention that Family Court's failure to appoint an attorney for the child warrants reversal. While appointment of an attorney for the child in a contested custody matter remains the strongly preferred practice, "such appointment is discretionary, not mandatory" (*Lips v Lips*, 284 AD2d 716, 716 [2001]; *see* Family Ct Act § 249 [a]; *Moor v Moor*, 75 AD3d at 678-679; *Matter of Swett v Balcom*, 64 AD3d 934, 936 [2009], *lv denied* 13 NY3d 710 [2009]; *Matter of Comins v Briggs*, 25 AD3d 842, 844 [2006]). Here, the mother's counsel first suggested the appointment of an attorney for the child in her opening statement at the commencement of the fact-finding hearing in December 2010. The father's attorney did not take a position on the issue. Family Court declined to appoint an attorney for the child at that time, but stated that it would reconsider the issue if it found such appointment necessary as the testimony unfolded. Family Court then heard testimony, not only from each of the parties, but also from witnesses, such as the child's teacher and baby-sitter, who had no apparent interest in the outcome of the proceedings. These witnesses provided the court with neutral accounts concerning the disputed issues raised by the mother with regard to, among other things, the father's disciplinary methods, as well as certain interactions between the child and her half brothers. In our view, the evidence, as a whole, did not raise a substantial question about the father's fitness, nor were there serious allegations concerning the child's emotional and physical health (*compare Matter of Amato v Amato*, 51 AD3d 1123, 1124-1125 [2008]). Given the age of the child and the other particular circumstances present

here, we discern no abuse of Family Court's discretion in failing to appoint an attorney for the child (*see Moor v Moor*, 75 AD3d at 679; *Matter of Swett v Balcom*, 64 AD3d at 936; *Matter of Burdick v Babcock*, 59 AD3d 826, 827 [2009]; *Matter of Walker v Tallman*, 256 AD2d 1021, 1022 [1998], *lv denied* 93 NY2d 804 [1999]; *compare Matter of Amato v Amato*, 51 AD3d at 1124-1125).

We have considered the mother's remaining contentions and find them to be either unpreserved or without merit.

Mercure, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.